IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| COCA-COLA BOTTLING CO., CONSOLIDATED, INC., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION 05-0230-WS-B |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS, LOCAL UNION NO. 991, ) ) ) ) ) ) | |
| Defendant. ) | |

**ORDER**

This action was transferred to the docket of the undersigned from that of Senior United States District Judge Virgil Pittman on April 5, 2006. Review of the court file reflects that Judge Pittman granted summary judgment in favor of defendant and against plaintiff; that plaintiff has appealed from that ruling; and that defendant now seeks an award of attorney's fees and expenses. Defendant's Second Motion for Award of Attorney's Fees and Expenses (doc. 33) has been fully briefed, and is now ripe for disposition.[1]

**I.   Background.**

This action arises from a labor dispute between plaintiff, Coca-Cola Bottling Co., Consolidated, Inc. ("CCB"), and defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers, Local Union No. 991 (the "Union"), relating to the former's soft-drink distribution operations in Mobile, Alabama. In spring 2004, CCB implemented a new distribution system for its products in the Mobile area, shifting from a so-called "conventional

---

[1] Because this action was originally assigned to Judge Pittman, and because it was he who entered the Summary Judgment Order (doc. 28) from which the request for attorney's fees emanates, the undersigned has reviewed the court file in its entirety to familiarize itself with these proceedings, the legal and factual underpinnings of plaintiff's unsuccessful attempt to overturn the arbitration award, and the underlying arbitration award itself.

distribution system" and "cold drink bottle system" to a "predictive selling system," with attendant restructuring of routes, duties, and wage rates for certain bargaining-unit members. The Union opposed this change from the outset, and filed multiple grievances alleging that CCB's actions circumvented the terms of the applicable collective bargaining agreement ("Agreement"). Because the Union had rejected this proposal, the Union maintained, CCB lacked authority under the Agreement to implement the new distribution system. For its part, however, CCB argued that Article 2 (the "Management Prerogatives" section) of the Agreement conferred upon it the absolute right to implement unilaterally the predictive selling system without the Union's consent. In light of this stance, the company denied the Union's grievances on the grounds that it had acted within its negotiated rights, prompting the Union to initiate arbitration pursuant to the Agreement.

   After an arbitral hearing that included live testimony from at least eight witnesses, as well as post-hearing briefing, the arbitrator rendered a 47-page Opinion and Award (the "Award") on April 8, 2005. In deciphering Article 2, the arbitrator concluded that while it provided a broad grant of authority to CCB with respect to business operations, Article 2 also included restrictive language rescinding that authority where its exercise would conflict with other specific provisions in the Agreement. The arbitrator opined that whether Article 2 conferred upon CCB the right to implement the new distribution system depended on whether such action would nullify other provisions of the Agreement. After substantial analysis of various Agreement terms, the arbitrator found that the new distribution system did in fact conflict with other Agreement provisions, that Article 2 therefore did not confer the right upon the employer to change the method of distribution without Union consent, and that nothing in the Agreement permitted CCB to leapfrog the consent requirement and unilaterally implement the predictive selling system. The necessary consent having never been granted, the arbitrator upheld the Union's grievance and ordered CCB to make the Union whole for any loss of compensation in connection with implementation of the predictive selling system. Because the evidence presented at the hearing was insufficient to enable the arbitrator to make a definitive determination of the amount of lost compensation, he did not enter an award for a sum certain, but instead retained jurisdiction for 120 days "to resolve any dispute arising from the implementation of this award, including reopening the record to determine entitlements of the

Union or any make whole remedy" (Award, at 47) in the event the parties were unable to resolve those issues themselves.

One week later, on April 15, 2005, CCB filed a petition to vacate the arbitration award (doc. 1) (incorrectly styled as a "Complaint") in this District Court.  As grounds for vacating the Award, CCB argued that the Award did not draw its essence from the Agreement, that it ignored the underlying premise and language of the Agreement, and that it was irrational and exceeded the authority of the arbitrator.  (*See* doc. 1, ¶¶ 17-19.)  In addition, CCB maintained that the Award should be vacated on grounds of timeliness (because the arbitrator did not issue his Award within 60 days after the close of the record) and completeness (because the arbitrator did not announce a specific dollar amount for the make-whole remedy).

After summary judgment briefing, Judge Pittman concluded that the timeliness and completeness arguments were not legally viable grounds for overturning the Award, and that the Award was in any event neither vague nor incomplete.  (*See* doc. 28, at 16-17.)  With respect to the contention that the Award did not draw its essence from the Agreement, Judge Pittman found that it did, inasmuch as the arbitrator had extensively analyzed specific provisions of the Agreement and explained how he interpreted those provisions and why he interpreted them the way he did.  (*See id.* at 20-21.)  Because the arbitrator had arguably construed the Agreement, Judge Pittman concluded, the Award must be enforced.  On that basis, Judge Pittman granted summary judgment to the Union, denied summary judgment to CCB, and indicated that he would consider the Union's request for attorney's fees.  The Union has now made just such a request.

**II.     Analysis.**

       *A.     Legal Standard for Attorney's Fee Award.*

"[A]ttorneys' fees are not routinely awarded in labor disputes."  *Burke v. Hogan*, 418 F. Supp.2d 236, 243 (W.D.N.Y. 2005); *see generally Johnson v. Florida*, 348 F.3d 1334, 1350 (11th Cir. 2003) ("Under the 'American Rule,' the default assumption is that each party is responsible for its own legal fees, and thus fees ordinarily will not be awarded to the prevailing party without express statutory authority.").  Nonetheless, it is well established that a "district court has authority to award attorneys' fees where it determines that a party has without justification refused to abide by the award of an arbitrator."  *International Union of Dist. 50, United Mine Workers of America v. Bowman Transp., Inc.*, 421 F.2d 934, 935 (5th Cir. 1970); *Electrolux*

*Home Products, Inc. v. United Auto., Aerospace and Agricultural Implement Workers of America*, 343 F. Supp.2d 747, 762 (N.D. Iowa 2004) (noting that unjustified refusal to abide by arbitrator's award is ground for award of attorney's fees).

A party seeks judicial review of a labor arbitrator's award "without justification" when it "take[s] an unreasonable, clearly wrong position – no matter how sincere the belief behind it." *Graphics Communications Int'l Union, Local 121-C v. Southern Coupon, Inc.*, 852 F. Supp. 970, 978 (N.D. Ala. 1993). Of course, a refusal to abide by an arbitration award is not automatically rendered "without justification" merely because the legal challenge proved unsuccessful. *See International Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.*, 639 F.2d 279, 283 (5th Cir. 1981). Instead, courts have distinguished between legal challenges predicated on the fundamental power of the arbitrator to make an award (such as challenges to arbitrability or whether the award draws its essence from the contract) and those attacking the award on the merits (such as challenges to the arbitrator's interpretation of the contract). *See United Food & Commercial Workers, Local 400 v. Marval Poultry Co.*, 876 F.2d 346, 351 (4th Cir. 1989); *Texas Steel*, 639 F.2d at 283-84. In the former setting, courts adopt a "relatively lenient" standard under which the challenge is deemed justified "unless there is literally no reasonably arguable legal support" for it, while in the latter they utilize a "much more stringent" test of deeming such a challenge "presumptively unjustified" because of its impairment of the national labor policy favoring arbitration. *Marval*, 876 F.2d at 351.[2] That said, however, it is also true that almost any legal challenge can be creatively characterized as relating to an arbitrator's jurisdiction rather than to the merits of the award; therefore, courts considering fee requests are not constrained by how a party labels its claim, but instead "must look to the realities of the

---

[2] *Compare SSA Terminals v. Machinists Automotive Trades Dist. Lodge No. 190*, 244 F. Supp.2d 1031, 1040 (N.D. Cal. 2003) (finding "without justification" standard satisfied where employer's challenge was nothing more than disagreement with arbitrator's findings on merits, which was frivolous and destined to fail) *with Emery Air Freight Corp. v. Local 851, Intern. Broth. of Teamsters, AFL-CIO*, 214 F. Supp.2d 295, 299 (E.D.N.Y. 2002) (denying attorneys' fees where employer's legal position that arbitrator had exceeded legal authority, while unpersuasive, was not so frivolous as to justify assessment of fees) *and Industrial Wire Products, Inc. v. Teamsters Local Union No. 688*, 195 F. Supp.2d 1150, 1156 (E.D. Mo. 2002) (denying attorneys' fees for judicial review of arbitration award where parties had good-faith dispute as to whether subject of award was even arbitrable).

situation" to determine whether the challenge is without justification so as to warrant a fee award. *Texas Steel*, 639 F.2d at 283.

### B.     CCB's Petition was Without Justification.

In opposition to the request for attorney's fees, CCB proffers two principal arguments. First, it contends that its petition for review of the arbitral award was substantially justified. Tellingly, CCB makes no attempt to justify its position that the Award did not draw its essence from the Agreement, even though that was plainly the focal point of its challenge. (*See* doc. 1, ¶¶ 17-19.) This omission is understandable. Given the extensive analysis and discussion of specific provisions of the Agreement presented in the arbitrator's decision and award, and the unambiguous manner in which that Award was rooted in the arbitrator's stated interpretation of the Agreement, no reasonable employer could have concluded that the Award did not draw its essence from the terms of the Agreement.[3]

---

[3]     On this point, the Court finds particularly apt the rationale of one district court in awarding attorney's fees on a motion to vacate an arbitrator's award, as follows:

> "Despite Petitioner's characterization of its challenge to the Arbitrator's award, the Court finds Petitioner's challenge to be nothing more than a disagreement with the Arbitrator's findings on the merits of the case. Because of the deference courts owe to arbitral decisions, a challenge to an arbitral decision based only on the merits of the case is frivolous because it is destined to fail. Furthermore, the Arbitrator's 35-page Award more than adequately addresses all the arguments Petitioner has raised [in] its motion. A careful reading of the Award should have convinced Petitioner of the futility of moving this court to vacate the award."

*SSA Terminals*, 244 F. Supp.2d at 1040. This reasoning dooms any contention by CCB that its argument that the Award failed to draw its essence from the Agreement was substantially justified. In actuality, this claim for relief was nothing more than a request that the Court second-guess the arbitrator's interpretation of the Agreement and substitute its own interpretation. Such a request was unjustified. *See, e.g., Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."); *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."). As CCB's silence on this point in connection with the fee application attests, seeking to vacate an arbitration award on the grounds that the arbitrator misinterpreted the parties' contract is plainly without justification.

Instead of attempting to defend the clearly merits-based arguments that were the driving force of its request to vacate the Award, CCB ascribes "substantial justification" solely to its ancillary contention that the award was incomplete because it directed CCB "to make the union whole for an unidentified loss of compensation." (Plaintiff's Brief (doc. 36), at 6.)  In so doing, CCB points to several cases, none of which support the proposition that an arbitration award may be vacated as incomplete where the arbitrator awards a make-whole remedy, indicates that the record lacks sufficient evidence to enable him to make a backpay calculation, and retains jurisdiction to resolve issues arising from implementation of the award if the parties cannot resolve them themselves.[4]  Simply put, the Award acknowledged that the amount of compensation due was yet to be determined.  Under the circumstances, CCB would have been justified in (a) negotiating with the Union to see if the parties could agree on a calculation of backpay resulting from unilateral implementation of the predictive sell system; or (b) requesting within the 120-day period that the original arbitrator reopen the record and take additional evidence as to the make-whole remedy.  However, CCB cites no legal authority, and the Court is aware of none, suggesting that the Award's failure to compute precise backpay somehow entitled

---

[4]  For example, CCB relies on *McKinney Restoration Co. v. Illinois Dist. Council No. 1 of Int'l Union of Bricklayers and Allied Craftworkers*, 392 F.3d 867 (7th Cir. 2004), for the proposition that vague arbitration awards may be vacated.  But *McKinney* explained that "[w]here the evidence establishes that the arbitrator does not believe the assignment is completed, the award is not final and appealable." *Id.* at 872.  The Award in this case cannot reasonably be read as evincing the arbitrator's intention that it was the final, conclusive word in the arbitration process; to the contrary, the arbitrator specifically recognized that he was not awarding a set dollar amount, and undertook the entirely commonplace approach of retaining jurisdiction for 120 days to resolve any disputes arising from implementation of the Award, including the make-whole remedy.  As such, CCB was not justified in characterizing the arbitrator as having "released jurisdiction of the arbitration" and "willingly declined future jurisdiction over the arbitration," (Opposition Brief (doc. 37), at 6), and its reliance on *McKinney* is misplaced.  Likewise, CCB's petition to vacate the Award as incomplete was not substantially justified under *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545 (11th Cir. 1993), wherein the Eleventh Circuit explained that if the amount of the "make-whole" remedy is not specified by the arbitrator, and if the parties cannot subsequently agree on it, "the normal course of action is to treat the award as ambiguous or incomplete and remand the dispute to the original arbitrator to clarify the award." *Id.* at 1549.  *AAA Plumbing* in no way justifies CCB's attempt to vacate the Award and reassign the grievance to a different arbitrator for a *de novo* decision on grounds of "incompleteness."

CCB to bypass both of those steps and instead disavow the Award altogether by filing suit in federal court to vacate the Award. CCB's actions in this regard were without justification, contrary to the clear terms of the Award, and at odds with federal appellate precedents from this and other circuits.[5] *See generally Marval*, 876 F.2d at 352 (rejecting as specious employer's contention that it was challenging remedial portion of arbitration award, rather than merits, and identifying critical distinction that employer was challenging award as made rather than threshold arbitrability or "essence" issues).

Second, CCB asserts that it has not refused to abide by the Award, and that attorney's fees should not be awarded because such a refusal is a precondition for fees in this context. The facts belie this contention. Just seven days after the Award was entered, CCB filed suit in this District Court seeking to vacate the Award. To date, no "make-whole" compensation has been paid from CCB to the Union pursuant to the Award. This litigation almost certainly derailed any attempt by the Union to return to the arbitrator for reopener and make-whole calculations during the 120-day period specified in the Award. That CCB may have engaged in some modicum (or even more) of unsuccessful settlement negotiations with the Union during the pendency of these proceedings does not change the facts that (a) 15 months after entry of the Award, no backpay has been paid; and (b) CCB's lawsuit scuttled the very mechanism created by the arbitrator for ascertaining the amount of compensatory damages owed if the parties could not reach a mutually-agreed figure in a timely manner. Under the circumstances, CCB's conduct cannot reasonably be construed as anything other than a refusal to abide by the Award. CCB's attempt to dodge attorney's fee exposure on that basis must fail.

---

[5] In arguing otherwise, CCB engages in a bit of revisionist history. CCB suggests that it brought this challenge to the Award seeking simply to remand the matter to arbitration via the methodology approved in *AAA Plumbing*. (Opposition Brief, at 6.) That is simply not true. The *ad damnum* clause of the "Complaint" indicates that CCB was requesting "that the Award be vacated, and that [CCB] be awarded its attorneys' fees and costs, and that [CCB] be granted such other, further and additional relief as may be just and proper." (Doc. 1, at 4.) Besides, had CCB merely wanted clarification of the Award as authorized under *AAA Plumbing*, it did not have to bring this matter to federal court at all, but instead could have solicited the arbitrator's assistance in determining the amount of backpay via the mechanism set forth on the face of the Award itself. CCB never did so. Thus, to force this action into the *AAA Plumbing* paradigm would be to mischaracterize the nature and posture of CCB's legal challenge by a wide margin.

For all of the foregoing reasons, the Court finds that CCB has refused without justification to abide by the arbitration award in this case, and that the Union is therefore entitled to recover its reasonable costs and attorneys' fees incurred in defending this action.

### C.     Award of Attorney's Fees and Costs.

Pursuant to Rule 54(d), Fed.R.Civ.P., Local Rule 54.3(e), and the directives of Judge Pittman, the Union has submitted a detailed specification and itemization of its costs and fees. That documentation reflects that the Union's counsel have devoted 90.8 hours to this litigation (including time spent on their fee petition), have spent 1.0 hours of paralegal time, and have incurred costs of $390.06. CCB does not challenge the reasonableness of those figures. In any event, the number of hours claimed is eminently reasonable, given that defense counsel answered the "Complaint," brought a counterclaim to enforce the Award, engaged in extensive briefing of cross-motions for summary judgment, and submitted two briefs and supporting documentation for their well-founded request for attorney's fees, all in a hair over 90 hours of attorney time.[6]

The only disagreement between the parties on the amount of the fee award is the hourly rate that should be used. Defense counsel explains that "attorney time has been billed to the Union at the agreed rate of $125 per hour," which it contends is "far below the rates of employers' counsel in labor matters - especially for counsel who are as experienced as the Union's counsel in this case." (Union Motion (doc. 33), at 5.) Instead of multiplying attorney time by the agreed-upon $125 per hour to arrive at an appropriate fee award, Union counsel requests an hourly rate of $270. (*Id.* at 6.)

CCB counters that any award of attorney's fees to the Union in excess of the $125 hourly rate charged to the Union is unauthorized, as a matter of law, and amounts to punitive damages against the employer. (Opposition Brief (doc. 37), at 8-10.) CCB's position is that, while in § 1983 and similar actions a statutory provision authorizes payment of reasonable attorney's fees,

---

[6] Nor is there any infirmity in the Union's inclusion in its requested award of time spent litigating the fee petition. *See Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990) ("It is well settled that time expended litigating attorney fees is fully compensable.").

here there is no such statute expressly authorizing a fee award.[7] As such, CCB reasons, the Union's recovery must be confined to actual hourly rates. The only authority cited by CCB is *United Steelworkers of America, AFL-CIO v. Butler Mfg. Co.*, 439 F.2d 1110 (8th Cir. 1971), wherein the court pronounced that attorney's fees in actions under § 301 of the Labor Management Relations Act are to be "awarded only an amount sufficient to cover plaintiff's actual expenses. Such an award is justified as compensatory, rather than punitive." *Id.* at 1112. However, CCB cites to no authority, and the Court has located none, extrapolating from *Butler* to a conclusion that the widespread "lodestar" method of calculating attorney's fees, in which hours reasonably spent by counsel are multiplied by reasonable hourly rates, does not apply in the labor arbitration context. At least one appellate court has held otherwise. *See Cruz v. Local Union No. 3 of Int'l Broth. of Elec. Workers*, 34 F.3d 1148, 1159-61 (2nd Cir. 1994) (applying "lodestar" methodology to attorney's fee computation in § 301 action).

The Eleventh Circuit has consistently applied the "lodestar" approach to calculation of attorney's fee awards in a variety of contexts. *See, e.g., Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001) (Lanham Act); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (Voting Rights Act); *Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997) (sanction in wrongful death case for destroyed documents); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (Section 1983 action); *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1147-48 (11th Cir. 1993) (contract claim for failure to repay loans). The ubiquitous lodestar methodology is both versatile and flexible, and is clearly the prevailing technique for computing fee awards in the Eleventh Circuit today. CCB having failed to provide any compelling reasoning or authority for not utilizing that technique here, the Court finds that the computation of the Union's attorney's

---

[7] CCB is correct that express statutory authorization for a fee award is lacking in this context. *See generally Seattle Times Co. v. Seattle Mailer's Union No. 32*, 664 F.2d 1366, 1370 (9th Cir. 1982) ("The Labor Management Relations Act, 29 U.S.C.S. § 185, authorizes breach of contract actions between unions and employers, but does not specifically provide for an award of attorney's fees.").

fees is governed by the lodestar standard.[8]

Under the "lodestar" approach, a fee award is determined by "multiplication of a reasonable hourly rate times hours reasonably expended," subject to certain adjustments that neither party has requested here and that therefore will not be considered. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988); *see also Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (same). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* In general, "the agreed-upon billing rate is a strong indication of a reasonable rate." *Tire Kingdom*, 253 F.3d at 1337; *see also Dillard*, 213 F.3d at 1354 (rate charged by lawyer to client "is powerful, and perhaps the best, evidence of his market rate"). That said, however, the Eleventh Circuit has found that the agreed-upon rate is not necessarily determinative, and that a district court does not abuse its discretion in awarding an hourly rate that is higher than the negotiated rate, "so long as the rate results in no windfall for the prevailing party." *Tire Kingdom*, 253 F.3d at 1337.

In support of its quest for a $270 billing rate, the Union proffers the Declaration of Sam Heldman, one of five attorneys from the Mobile firm of Gardner, Middlebrooks, Gibbons, Kittrell, Olsen, Walker & Hill who billed time to this file. Heldman, who billed 38.4 of the 90.8 hours covered by the Union's fee petition, represents that he has personally billed and collected

---

[8] As mentioned *supra*, CCB did proffer *Butler*, a 35-year old decision from another circuit, for the proposition that attorney's fees are capped at "actual expenses" in the § 301 context. But appellate courts' views of attorney's fee requests have evolved considerably since 1971. For example, in 1974, the old Fifth Circuit opined that "[i]n no event ... should the litigant be awarded a fee greater than he is contractually bound to pay." *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). In 2001, however, the Eleventh Circuit, relying on intervening Supreme Court precedent, rejected that aspect of *Johnson* and declared that fee agreements do not impose strict limits on fee awards. *Tire Kingdom*, 253 F.3d at 1337. Thus, taken in its proper context, *Butler* (like the cited portion of *Johnson*) conflicts with current judicial thinking about the permissible boundaries of attorney's fee awards. As the determination in *Butler* that fee awards are subject to an absolute cap of "actual expenses" is not indicative of Eleventh Circuit law today, the Court declines to follow it.

hourly rates ranging from $100 to $250 per hour in other matters.  But Heldman makes no attempt to identify which hourly rates within that spectrum he has personally received in other cases "in the relevant legal community for similar services."  The Court therefore has no way of gauging which rates within the broad range which Heldman cites best reflect the prevailing market rate in the Mobile legal community for work of this type.  Moreover, the thrust of the Union's fee application is that the $125 agreed-upon rate does not reflect the prevailing market rate for this kind of work.  For that argument to have allure, however, there must be some evidence that special circumstances and non-market forces produced this $125 rate.  Yet Heldman's Declaration, and the Union's submissions concerning the request for attorney's fees, are silent as to specifically why defense counsel has billed the Union in this case at an agreed rate of $125 per hour, or less than 50% of what defense counsel claims is the going market rate for this type of work in this legal market.  Is it because the Union is unable to pay a higher rate?  Or is it because Heldman's firm has an ongoing relationship with the Union such that the firm is willing to provide bulk quantity discounts to the Union for its work?  Or is it because prevailing market rates for union work to enforce arbitration awards are simply lower than those for other types of legal services in the relevant community?  These unanswered questions have potentially profound implications for purposes of fixing the prevailing market rate.  *See generally Norman*, 836 F.2d at 1300 ("For example, it is not unusual for a law firm representing a governmental entity on an ongoing basis to charge substantially lower hourly rates than would be charged for representation in a single case.  Where the facts show this, the fee charged by a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer.").

       Perhaps recognizing these weaknesses, the Union attempts to bolster its fee petition by submitting two affidavits from attorneys at the law firm of Ogletree Deakins, P.C., which were filed in the Northern District of Alabama in a different case late last year and which claim hourly rates of between $230 and $270.  There are at least three problems with this evidence.  First, it does not concern the "relevant legal community."  *See American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) ("The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed.").  These exhibits concern billing rates for Birmingham attorneys

litigating a lawsuit in Birmingham. Prevailing market rates in Birmingham might reasonably be expected to differ substantially from those in Mobile. Second, the Union makes no effort to show that the Ogletree affidavits concern "similar services." *See Norman*, 836 F.2d at 1299 ("[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). The Ogletree affidavits appear to relate to a putative WARN Act class action which, on its face, appears far more complex and specialized than garden-variety enforcement of a labor arbitration award. Third, there is no indication that the Ogletree attorneys were actually awarded rates of $230 or $270 in that case. Thus, the Ogletree affidavits are not helpful in establishing a prevailing market rate for similar services in the Mobile community.

In short, the Union has failed to make a sufficient showing to warrant an hourly rate of $270. It has not submitted affidavits or other evidence explaining the basis for the agreed-upon $125 hourly rate in this case. It has not drawn on its wealth of experience in labor-management disputes in the Mobile community to document typical, prevailing hourly rates for such matters. And it has attempted to rely on a fee petition from a different legal community in a different kind of case to establish a prevailing market rate for this legal community in this kind of case. Given these deficiencies in proof, the Court cannot say with any confidence that awarding a $270 hourly rate as requested by the Union's counsel would not result in a windfall for the Union and improperly punish CCB.[9] In the absence of a sufficient evidentiary showing, the Union will be reimbursed for its counsel's time at the agreed-upon $125 hourly rate.

### III.   Conclusion.

For all of the foregoing reasons, the Union's Second Motion for an Award of Attorney's Fees and Expenses (doc. 33) is **granted**. The Court hereby **awards** the Union attorney's fees of $11,395.00 (90.8 hours times $125/hour plus 1.0 hours times $45/hour) and expenses of $390.06,

---

[9] Although the Union failed to present sufficient evidence to support the $270 hourly rate claimed, the Court is under no obligation to conduct an evidentiary hearing or otherwise to afford the Union a second bite at the apple in shoring up the deficiencies in its proof. *See Norman*, 836 F.2d at 1303 ("Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. ... It is perfectly proper to award attorney's fees based solely on affidavits in the record.").

for a total award of **$11,785.06**.  The Motion is **denied** to the extent that it requests a greater amount of attorney's fees.

    DONE and ORDERED this 17th day of July, 2006.

                                              s/ WILLIAM H. STEELE
                                              UNITED STATES DISTRICT JUDGE