**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **COCA-COLA BOTTLING CO.,** | ) | |
| **CONSOLIDATED, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 05-0230-WS-B** |
| | ) | |
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF TEAMSTERS, CHAUFFEURS,** | ) | |
| **WAREHOUSEMEN, AND HELPERS,** | ) | |
| **LOCAL UNION NO. 991,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on remand from the Eleventh Circuit Court of Appeals. *See Coca-Cola Bottling Co., Consolidated v. International Brotherhood of Teamsters*, 2006 WL 3626955 (11th Cir. Dec. 13, 2006) (doc. 45).

**I.      Procedural History.**

This action arises from a labor dispute between plaintiff, Coca-Cola Bottling Co., Consolidated, Inc. ("CCB"), and defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers, Local Union No. 991 (the "Union"), relating to the former's soft-drink distribution operations in Mobile, Alabama. In spring 2004, CCB implemented a new distribution system for its products in the Mobile area, with attendant restructuring of routes, duties, and wage rates for certain bargaining-unit members. The Union opposed this maneuver, and filed grievances alleging that CCB's actions violated the parties' collective bargaining agreement ("Agreement"). For its part, CCB contended that the Agreement authorized it to implement unilaterally the new distribution system without the Union's consent. Arbitration proceedings ensued before Arbitrator Harold Curry.

Following a hearing, Arbitrator Curry rendered a lengthy written Opinion and Award (the "Award") on April 8, 2005. In summary, the arbitrator concluded that the Agreement did not confer authority on CCB to change the method of distribution without Union consent or to

implement unilaterally the new distribution system.  Such consent having never been granted, the arbitrator upheld the Union's grievance and deemed CCB in breach of the Agreement.  The arbitrator specifically ordered "that the Union shall be made whole for any loss of compensation" in connection with CCB's implementation of the new system.  Because the evidence in the record was insufficient to enable him to make a definitive determination of the amount of lost compensation, Arbitrator Curry did not enter an award for a sum certain, but instead entered a liability award, ordered make-whole compensation generally, and retained jurisdiction for 120 days "to resolve any dispute arising from the implementation of this award, including reopening the record to determine entitlements of the Union or any make whole remedy" (Award, at 47) in the event the parties were unable to resolve those damages issues themselves.  In the eyes of the Eleventh Circuit, this approach "constituted a *de facto* bifurcation of the damages issue to be resolved at a later time."  (Doc. 45, at 2 n.1.)

One week later, on April 15, 2005, CCB filed a petition in this District Court to vacate the arbitration award (doc. 1).[1]  As grounds for vacating the Award, CCB argued that it did not draw its essence from the Agreement, that it ignored the premise and language of the Agreement, and that it was irrational and exceeded the authority of the arbitrator.  (*See* doc. 1, ¶¶ 17-19.)  CCB further maintained that the Award should be vacated as untimely and incomplete (because the arbitrator did not set a specific dollar amount for the make-whole remedy).  After summary

---

[1]     It is unclear whether CCB and the Union negotiated over the amount of the make-whole remedy before CCB initiated these proceedings.  From the court file, it does not appear that CCB ever invoked the grievance machinery of the collective bargaining agreement, solicited the continued participation of Arbitrator Curry to resolve damages issues, or otherwise sought to secure an arbitration or other process to interpret or decide the financial aspects of the Award antecedent to filing its lawsuit.  Nor, for that matter, does CCB's Complaint request a declaration by the District Court as to whether the damages issue should be submitted to the original arbitrator or a new arbitrator.  Rather, the sole cause of action identified in the Complaint is a request that the Award be vacated.  (*See* doc. 1, at 3-4.)  While the Union counterclaimed to enforce the Award, its Counterclaim (doc. 7) was silent on the question of who should decide damages, and did not purport to put that issue in play.  Nor did CCB's Answer to the Counterclaim (doc. 9) interpose this issue, with CCB instead reiterating its argument that the Award must be vacated as incomplete.  Based on the pleadings, a colorable argument could be made that the issue of whether, procedurally, damages should be calculated by the original arbitrator or a new arbitrator had never been joined in this lawsuit before CCB appealed the adverse summary judgment ruling to the Eleventh Circuit.

judgment briefing, Senior District Judge Pittman (to whom the case was originally assigned) concluded that the timeliness and completeness arguments were not legally viable grounds for vacating the Award, and that the Award was in any event neither vague nor incomplete as to liability.  (*See* doc. 28, at 16-17.)  With respect to the contention that the Award did not draw its essence from the Agreement, Judge Pittman found that it did, inasmuch as the arbitrator had extensively analyzed specific provisions of the Agreement and explained his interpretation of them.  (*See id.* at 20-21.)  Because the arbitrator had arguably construed the Agreement, Judge Pittman concluded, the Award must be enforced.  On that basis, Judge Pittman granted summary judgment to the Union and denied summary judgment to CCB.  CCB appealed.

During the pendency of that appeal, the Union moved the District Court for an award of attorney's fees.  At the close of briefing on the attorney's fee issue, this case was transferred from Judge Pittman's docket to that of the undersigned.  After familiarizing himself with the record and particularly Judge Pittman's summary judgment ruling, the undersigned entered an Order (doc. 41) granting the Union's request for attorney's fees and awarding fees and expenses totaling $11,785.06.  CCB appealed from this ruling too.

On appeal, the Eleventh Circuit candidly observed that "it is difficult to discern what, exactly, the parties are arguing about and what they want the courts to do about it."  (Doc. 45, at 3.)  In that regard, the panel noted that CCB had abandoned its challenge to the arbitrator's conclusion that it had breached the Agreement, and that both parties now agreed that the Award was incomplete.[2]  Based on the parties' statements on appeal, the panel concluded that "[t]he crux of the dispute thus boils down to how the amount of damages should now be determined," and in particular whether the matter should be shipped back to the original arbitrator for a

---

[2]        Both of these positions were in marked contrast to the parties' positions in the District Court proceedings.  On summary judgment, CCB argued at length that the award must be vacated.  (*See* Plaintiffs' Proposed Determinations (doc. 19), at 11-17.)  Indeed, the sole claim identified in CCB's Complaint was that the Award failed to draw its essence from the collective bargaining agreement and must therefore be vacated.  (*See* Complaint (doc. 1), ¶¶ 17-19.)  On appeal, however, CCB abandoned its efforts to vacate the Award.  Apparently, then, CCB's position has metamorphosed greatly during this litigation.  Likewise, the Union urged Judge Pittman to reject as meritless CCB's argument that the Award was incomplete (Defendant's Opposition Brief (doc. 27), at 3-5.), only to recast its position on appeal.  The resulting "moving targets" have unquestionably impaired the efficient resolution of these proceedings.

damages determination (as the Union argued), or whether the parties should be ordered to initiate a new grievance procedure with a new arbitrator (as CCB argued).[3]  (*See* doc. 45, at 3.)  Because Judge Pittman's summary judgment order failed to address how the amount of damages should be determined, the panel remanded the case for this Court "to determine the appropriate procedure for resolving the damages issue."  (*Id.* at 4.)  Upon receipt of the Eleventh Circuit's mandate, the undersigned ordered supplemental briefing "on the very narrow question of how damages should be calculated."  (Doc. 46, at 1.)  Such briefing having been concluded, the damages question is now squarely presented for resolution by this Court.[4]

## II.   Discussion.

### A.   *Binding Precedent Calls for Remand to the Original Arbitrator.*

On remand, CCB claims that the proper procedure for determining the damages award, if any, to which the Union is entitled is via a new grievance arbitration before a different arbitrator. CCB contends that such an outcome is mandated by a footnote in *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division*, 481 F.2d 821 (5th Cir. 1973), wherein the court

---

[3]      It does not appear that the parties ever shared with Judge Pittman their conviction that this issue was the "crux of the dispute" before or after he ruled on their cross-motions for summary judgment.  Indeed, the parties' summary judgment submissions made scant mention of the issue of how damages should be calculated in the event of a remand.  When the summary judgment order omitted any mention of how, procedurally, the damages issue should be decided, neither party requested that Judge Pittman amend or correct the judgment to make specific findings on that issue as being the crux of this litigation.  *See generally International Union of Operating Engineers, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 189-90 (7th Cir. 1996) ("Of course, where the parties cannot agree on the precise amount of back wages and benefits due under a broad make-whole ruling, a party can move the district court to send the matter back to arbitration to resolve the confusion.").  If, as they told the Eleventh Circuit, this is what the parties were really fighting over, then the interests of efficiency would certainly have been promoted had they notified Judge Pittman of the centrality of this issue, instead of focusing their arguments at the District Court almost exclusively on the issue of whether the Award should be vacated, then leaning exclusively on the damages issue at the Court of Appeals as being the heart of their dispute.  "Courts cannot read minds."  *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 844 (11th Cir. 1989).

[4]      In a separate opinion, the Eleventh Circuit vacated this Court's Order awarding attorney's fees to the Union for reconsideration in light of its opinion concerning the damages issue.  (*See* doc. 48.)  After resolving the damages issue, the Court will revisit the attorney's fee issue in the wake of these developments.

mused that "[t]here may be ... special circumstances where invocation of grievance machinery might be appropriate following the award of an arbitrator.  Ordinarily this would result where a *collateral* dispute arises from an award which is *not* self-executing."  *Id.* at 824 n.3 (emphasis in original).

But CCB would selectively magnify the language of this footnote while ignoring the context in which it was written, leading to a flawed application of this precedent.  In *San Antonio Light*, the arbitrator upheld a fired union member's grievance, ordered reinstatement, and further ordered that the grievant be made whole for his lost wages, without computing the specific amount of backpay.  When the parties could not agree on the calculation of the make-whole remedy, and further could not agree to return to the original arbitrator to determine the financial aspects of the award, the employer invoked the arbitral process anew to interpret those financial aspects.[5]  Although the union's stance was that the second arbitration was invalid and of no force and effect, a second arbitrator then entered a new award setting a specific dollar figure for the make-whole remedy ordered by the first arbitrator.  The appellate court's task was to determine whether and to what extent to enforce the two arbitral decisions.[6]  As an initial matter, the *San Antonio Light* panel concluded that the initial arbitration award's failure to recite the amount of the make-whole remedy rendered it "ambiguous and thus unenforceable unless and until clarified."  481 F.2d at 824.  Where an arbitration award requires clarification as to backpay, the

_____

[5]  In so doing, the employer filed a new grievance, notwithstanding the union's objection that this grievance did not present an arbitrable matter.

[6]  The primary issue presented on appeal was whether the company's grievance – seeking interpretation of the prior arbitration award – was even an arbitrable matter.  The union argued strenuously that it was not, and that the second arbitrator was therefore lacking in jurisdiction.  Although stating that it was "inclined to agree with the Union" on this point, the former Fifth Circuit deemed it unnecessary to decide whether the company's grievance presented an arbitrable matter because the second arbitrator's award had resolved the parties' dispute and should be given full effect.  *San Antonio Light*, 481 F.2d at 824.  In that regard, the panel recited the ancient legal maxim, "*Fieri non debet, sed factum valet,*" or "It ought not to be done, but if done it is valid."  *Black's Law Dictionary* (7th Ed.), at 1637.  The clear implication of the *San Antonio Light* court's reasoning on this point was that the company's grievance seeking interpretation of a prior arbitrator's decision was improper, but that the second arbitrator's interpretation, having already been completed by the time the matter reached the appeals court, would not be upended.

-5-

court explained, "[t]he normal course of action ... is for the court to remand the matter to the original arbitrator for clarification." *Id.* at 825. Given that the second arbitrator had already provided the requisite "clarification" by conducting a hearing, taking evidence and issuing an award, the *San Antonio Light* court continued, it "would be a pointless gesture" in this instance to send the case back to the original arbitrator, and "an appropriate resolution of this already too-lengthy dispute would in no way be served by remanding to [the first arbitrator] for yet another interpretation of his original award." *Id.* at 825-26.

Thus viewed in its entirety, rather than the two stray sentences in a footnote seized upon by CCB, *San Antonio Light* cannot lend credence to CCB's proposed procedure for resolving the financial ambiguity in the Award for three reasons. First, far from endorsing the practice of using a second arbitrator to clarify the financial aspects of a first arbitrator's award, the *San Antonio Light* court expressed at least tacit disapproval of it, but accepted the second arbitrator's award (which had already taken place) as a nod to pragmatism and in the interests of efficiency for a dispute which (much like the case at bar) had already dragged on for far too long. Here, there has been no such second arbitral proceeding, so the considerations of pragmatism and efficiency that guided the *San Antonio Light* panel would in no way favor submitting the interpretation of the first arbitral award to a new arbitration before a new arbitrator. Second, *San Antonio Light* is distinguishable because in that case the company had filed a grievance concerning the interpretation of the first arbitrator's award, thus invoking the "grievance machinery" mentioned in the footnote. Here, by contrast, CCB offers no indication that it ever invoked such grievance machinery concerning the original arbitrator's award; rather than filing a grievance and invoking the arbitral process, CCB invoked the power of this federal court by immediately filing a lawsuit seeking to have the Award vacated, not clarified. As such, the much-ballyhooed footnote is inapplicable here because there has been no attempt to invoke the grievance procedure. CCB having elected a different path, the Court will not engage in speculative "what-ifs" to imagine what form the analysis might have taken had CCB initiated the grievance procedure to interpret the original Award at any time during the intervening 25 months, instead of waging this battle in federal court.

Third, and most importantly, the critical insight furnished by *San Antonio Light* is the panel's explanation that, in cases where the financial terms of an award are ambiguous and

unenforceable, "the normal course of action ... is for the court to remand the matter to the original arbitrator for clarification."  481 F.2d at 825.  The Eleventh Circuit has embraced this principle.  Although arbitration awards awarding backpay, but leaving the calculations of same to the parties, are considered "final and enforceable," it is also true that "[i]f the parties cannot agree on the amount of backpay ..., the normal course of action is to treat the award as ambiguous or incomplete and remand the dispute to the original arbitrator to clarify the award." *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1549 (11th Cir. 1993).[7]  The circumstances presented here fall neatly within the scenario described in *AAA Plumbing*; indeed, Arbitrator Curry entered an award with a make-whole remedial component, and the parties have been unable to agree on the computation of that make-whole remedy.  Thus, a straightforward application of the quoted passage of *AAA Plumbing*, which in turn hews to the former Fifth Circuit's analysis in *San Antonio Light*, would dictate that the normal course of action should be to resubmit this dispute to the original arbitrator to clarify the Award on this narrow point.  There being no extenuating or unusual circumstances here, the Court will proceed in that normal fashion.

Such an approach is fully consistent with the sizeable body of case law in which courts have seen fit to remand actions to the original arbitrator for clarification, amplification or interpretation of the existing award.  *See, e.g., M & C Corp. v. Erwin Behr GmbH & Co., KG*, 326 F.3d 772, 783 (6th Cir. 2003) (rejecting argument that remand of an ambiguous award to arbitration should be to a brand new arbitrator, reasoning that "courts usually remand to the original arbitrator for clarification of an ambiguous award when the award .... is susceptible to more than one interpretation") (citation omitted); *Locals 2222, 2320-2327, Int'l Brotherhood of Elec. Workers, AFL-CIO v. New England Tel. and Tel. Co.*, 628 F.2d 644, 647 (1st Cir. 1980) ("it is firmly established within the federal labor law that a district court may ... resubmit an existing arbitration award of the type here in issue to the original arbitrators for 'interpretation' or

---

[7]        According to the *AAA Plumbing* panel's reading of *San Antonio Light*, where there is a dispute over the amount of backpay owed under an arbitration award, the 1973 decision "would dictate a remand to the original arbitrator to decide the amount of backpay." 991 F.2d at 1549.  Thus, binding precedent has construed *San Antonio Light* in a manner directly contrary to CCB's position here.

'amplification'"); *American Postal Workers Union, AFL CIO v. U.S. Postal Service*, 254 F. Supp.2d 12, 17 (D.D.C. 2003) (where arbitration award was susceptible to more than one interpretation, the district court remanded the award to the original arbitrator for clarification as to remedy); *Weinberg v. Silber*, 140 F. Supp.2d 712, 722 (N.D. Tex. 2001) ("Rather than vacating the award and 'reopening' proceedings on the merits by sending the case to a new arbitrator, the proper course of action is to remand to the parties' chosen arbitrator for non-merit-based clarification of the award."); *United Paperworkers Int'l Union, AFL-CIO, CLC v. White Pigeon Paper Co.*, 815 F. Supp. 1061, 1065 (W.D. Mich. 1993) ("an issue may be remanded to the arbitrator if the arbitrator failed to decide an issue. ... In addition, a district court may resubmit an existing labor arbitration award to the original arbitrator for interpretation or amplification.").

In concluding that remand to the original arbitrator is proper, the Court recognizes that "[a] remand for clarification is proper only when the award itself can be interpreted in a variety of ways." *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 780 n.4 (11th Cir. 1993). But the Eleventh Circuit has expressly found in this case that "[t]he make whole remedy ordered by the Arbitrator is open to multiple interpretations" and is "ambiguous" on the issue of damages. (Doc. 45, at 3.) As such, this is just the kind of situation in which remand to the original arbitrator for clarification has been deemed appropriate.

### B.   Plaintiff's Arguments to the Contrary Lack Merit.

Notwithstanding the clear principles enunciated in *San Antonio Light* and *AAA Plumbing*, CCB argues that the damages issue must be resolved within the framework of a brand-new arbitration before a brand-new arbitrator. The Court disagrees.

As an initial matter, CCB insists that the backpay calculation would require additional factfinding, such that the Award is not "self-executing." According to CCB, that fact mandates a new arbitration proceeding. But that is not the law. Additional factfinding and remand to the original arbitrator can and do coexist peacefully in the precedents. In *San Antonio Light*, for example, additional factfinding would unquestionably be necessary to determine the ambiguous financial aspects of the award, as a second hearing was convened to take evidence for that very purpose, yet the court explained that the normal course of action would be to remand to the

original arbitrator.[8]  Likewise, the *AAA Plumbing* court opined that, where parties cannot agree on backpay, remand to the original arbitrator is appropriate.  Additional factfinding will always, or nearly always, be required to determine backpay, yet the *AAA Plumbing* court included no caveats or qualifiers that remand to the original arbitrator is appropriate only if no further factfinding is needed.  More generally, appellate courts have routinely remanded cases to the original arbitrator in circumstances where additional determinations of fact would plainly be undertaken.  *See, e.g., AAA Plumbing*, 991 F.2d at 1550 (remanding to original arbitrator to clarify award where issues arbitrator would have to decide on remand include validity of settlement between parties); *United Steelworkers of America, AFL-CIO-CLC v. W.C. Bradley Co.*, 551 F.2d 72, 73 (5th Cir. 1977) (remanding to original arbitrator where parties inexplicably failed to provide arbitrator with all facts needed to frame his award, because only by returning matter to original arbitrator could courts assure parties of the bargained-for benefits of the arbitrator's informed judgment and precise construction); *New England Tel.*, 628 F.2d at 649 (where arbitrator ordered make-whole backpay award, without computing amount of backpay, and parties disagreed as to that amount, matter was properly remanded to original arbitrator, even though arbitrator might have to construe additional language in collective bargaining

---

[8]        Furthermore, the *San Antonio Light* footnote on which CCB predicates its argument does not state that the grievance machinery must be invoked anew, and that remand to the original arbitrator is improper, whenever the original award is not self-executing.  Rather, that footnote reflects that invoking the grievance machinery may be appropriate "where a *collateral* dispute arises from an award which is *not* self-enforcing."  *San Antonio Light*, 481 F.2d at 824 n.3.  Thus, under the plain language of this footnote, a new grievance/arbitration procedure may be warranted where both a collateral dispute has arisen and the original award is not self-executing.  Here, we have the second of those conditions, but not the first.  The parties' dispute over the make-whole remedy is emphatically not a collateral matter, as explained *infra*.  In asserting that a non-self-executing award is itself a sufficient condition for a brand-new arbitration before a new arbitrator, CCB disregards *San Antonio Light* and *AAA Plumbing*, and instead would have this Court follow an unpublished decision from the Northern District of Texas, *Brotherhood of Maintenance of Way Employees v. Union Pacific R. Co.*, 2004 WL 2296952, *6 (N.D. Tex. Oct. 6, 2004), wherein the court read extant case law as providing for new arbitrations whenever a dispute arises from an award that is not self-enforcing.  (Plaintiff's Brief (doc. 49), at 5.)  The Court declines to follow *Brotherhood of Maintenance* on the grounds that is not published, not binding, and not consistent with the precedents set forth herein.  Classifying an award as not being self-executing, without more, neither mandates remand to a new grievance arbitration nor precludes remand to the original arbitrator for clarification.

agreement).

Next, CCB balks that "the calculation of damages constitutes a collateral matter to be resolved," such that a new arbitration is in order.  (Plaintiff's Brief, at 6.)  To be sure, "remand is not appropriate ... where it would force a decision on an issue not previously submitted to the arbitrator.  Under those circumstances, the Plaintiff must again invoke the grievance and arbitration procedure in order to resolve the collateral issue."  *Oil, Chemical & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Texas Inc.*, 677 F.2d 492, 495 (5th Cir. 1982) (citations omitted).  But any contention that the backpay issue was not submitted to Arbitrator Curry is pure fiction.  The Union's grievance specifically requested that "if the Company implements the new predictive selling system, all employees to be made whole for any lost wages under this system."  (Defendant's Brief (doc. 50), at Exh. A.)  CCB admits that the grievance requested make-whole relief for all lost wages incurred by virtue of the new distribution system.  (Plaintiff's Brief (doc. 49), at 2.)  Thus, there can be no doubt that the issue of damages was submitted to the arbitrator.[9]  *See generally International Chemical Workers Union v. Columbian Chemicals Co.*, 331 F.3d 491, 499 (5th Cir. 1999) (determining that "the issue of damages was before the arbitrator" because the union had requested a make-whole remedy).  While CCB is correct that the arbitrator did not <u>decide</u> the question of damages, that is a very different question than whether the damages issue was <u>submitted</u> to him.  The latter inquiry, and not the former, is determinative of whether the current dispute is "collateral" to the original arbitration decision.  *See New England Tel.*, 628 F.2d at 649 (placing dispositive weight for decision to return action to the original arbitrator, rather than a new arbitrator, on the fact that

---

[9]       On this point, the Court cannot agree with CCB's characterization of the Eleventh Circuit's ruling in this case as follows: "Essentially, and critically, the Circuit Court held the Arbitrator declined to review the damages issue unless the parties expressly asked him to." (Plaintiff's Brief, at 7.)  Far from "holding" that the damages issue was never submitted to the arbitrator, the Eleventh Circuit merely observed that (a) the arbitrator ordered the Union to be made whole for any loss of compensation, but (b) the arbitrator found insufficient information in the record to determine the amount of damages, so (c) the arbitrator offered to retain jurisdiction on that question if requested to do so by the parties.  (Doc. 45, at 2.)  Plainly, then, the damages issue <u>was</u> submitted to the arbitrator, but there was not enough evidence before him to quantify that amount at the time of the Award.  Any suggestion that the appeals court has "held" that the damages issue was never submitted to the arbitrator is inaccurate.

"the present dispute, while not actually reached in the first arbitration proceeding, was plainly encompassed by the original submittal").[10]  Besides, CCB's contention that the damages determination is "collateral" to a prior liability finding and therefore must be sent to a new arbitration flies in the face of the *AAA Plumbing* rule that the damages issue should be remanded to the original arbitrator where an arbitrator finds liability and the calculation of backpay is left to the parties, who prove unable to agree on the amount.  If the damages issue in this case is collateral to the liability issue, as CCB argues, then so too would be the damages issue described in *AAA Plumbing*, yet the Eleventh Circuit in that case reaffirmed the general rule that the award should be remanded to the original arbitrator for clarification in that scenario.  For all of these reasons, calculation of the make-whole remedy in this case is not properly viewed as collateral to the liability issue decided in the original Award.

### C.   *Scope of Clarification Proceeding.*

Undaunted by an adverse ruling on the issue identified by the Eleventh Circuit for this Court to decide, CCB asserts that if (as this Court has found) remand to Arbitrator Curry for clarification is appropriate, such clarification must be confined to the existing arbitration record. In that regard, CCB argues that "it is clear that any remand to the original arbitrator for clarification should not involve reopening the record to take new evidence from the parties." (Plaintiff's Brief, at 8.)  This assertion is devoid of merit.  The Court is unaware of a single authority in which courts remanding a dispute to an original arbitrator for clarification have confined the arbitrator to the existing record and forbidden him from taking additional evidence.[11]  The sole authority cited by CCB for the proposition that remand for clarification

---

[10]    This distinction is borne out on pages 5 and 6 of CCB's own brief, wherein plaintiff cites *Oil, Chemical and Atomic Workers Int'l Union, Local 4-750 v. Shell Oil Company*, 1994 WL 150753 (W.D. La. Apr. 13, 1994), another unpublished district court case from another jurisdiction, for the proposition that courts cannot order arbitrators to make awards beyond the scope of the issues originally submitted to them, such that remand to the original arbitrator is inappropriate for collateral disputes.  Under CCB's own formulation, then, issues submitted to, but not decided by, the arbitrator in the first instance cannot reasonably be deemed "collateral."

[11]    To the contrary, the relevant case law discloses numerous examples of remands in which reopener of the arbitral record on remand for clarification would appear necessary or at least highly likely.  *See, e.g., AAA Plumbing*, 991 F.2d at 1550 (remanding for clarification

precludes reopener of the arbitral record for any purpose is a general citation to *Brotherhood of Maintenance*, the unpublished decision from the Northern District of Texas discussed in footnote 8, *supra*.  But review of that decision reveals no such blanket prohibition.

Aside from the lack of precedential support, CCB's position is unpersuasive to this Court for pragmatic reasons.  To order the original arbitrator to take up the question of damages, while simultaneously forbidding him to reopen the arbitral record, would be to send him on a fool's errand.  In the Award dated April 8, 2005, Arbitrator Curry found on the record before him that "the full economic impact of the predictive sell system on bargaining unit employees remains speculative and uncertain" and that he "lacks sufficient information to make a definitive and plenary determination with respect to ... the financial impact the implementation of the predictive selling system has had on the bargaining unit employees."  (Award, at 44, 46.)  Thus, Arbitrator Curry has made it abundantly clear that he is unable to fix the amount damages from the existing record.  For this Court to remand to him for a damages determination while forbidding him from considering new evidence would serve no constructive purpose, would set up Arbitrator Curry to fail, would guarantee that the parties must expend further unnecessary time and money litigating this already excessively protracted dispute, and would "seriously undermine the chief policies underlying resort to [arbitral] procedures in the first instance: the speedy, flexible and inexpensive resolution of labor disputes."  *New England Tel.*, 628 F.2d at 649.  This the Court will not do, particularly in the absence of any authority holding that reopening an arbitral record upon remand for clarification is verboten.

      **D.**    ***Conclusion.***

The Eleventh Circuit remanded this case with instructions that this Court "determine the appropriate procedure for resolving the damages issue."  (Doc. 45, at 4.)  The Court makes that determination as follows:  This matter is one in which the normal course of action identified by the Eleventh Circuit in *AAA Plumbing* is appropriate.  Arbitrator Curry's original Award will be

---

where arbitrator would have to decide validity of parties' settlement); *W.C. Bradley*, 551 F.2d at 73 (remanding to original arbitrator where parties had failed to provide arbitrator with all facts needed to frame his award); *New England Tel.*, 628 F.2d at 649 (remanding to original arbitrator for amplification or interpretation where arbitrator might have to construe additional language of collective bargaining agreement to determine amount of backpay).

treated as ambiguous or incomplete, because it settles the question of liability while leaving the calculation of the amount of the make-whole remedy to the parties, who proved unable to agree on that amount.  Under *AAA Plumbing*, this action will be remanded to Arbitrator Curry to clarify the Award.  In making this determination, the Court imposes no limitations on the arbitrator's ability to reopen the arbitral record, hear additional evidence, and make additional findings of fact as necessary to compute the make-whole remedy.  That said, however, the Court does restrict the arbitrator's clarification to the narrow question of calculating the amount of the make-whole relief ordered in the April 8, 2005 Award.  *See Brown v. Witco Corp.*, 340 F.3d 209, 221 (5th Cir. 2003) ("on remand, the arbitrator is limited in his review to the specific matter or matters remanded for his clarification and he may not rehear or redetermine matters outside the scope of the remand order").

In so concluding, the Court rejects CCB's calls for the Union "to invoke the time-consuming and burdensome grievance process again in order that the parties might resolve the remnants of a dispute which has already once traveled that route."  *New England Tel.*, 628 F.2d at 649 (citation omitted).  The Court further finds that "[t]he reinvocation of the grievance machinery in this case would not only be shamefully wasteful of resources and grossly inefficient, but it would be manifestly unfair to [the Union], who inevitably would have to bear the economic and other costs of the new procedure," all in derogation of the formidable federal policy favoring efficient resolution of disputes.  *Pace Union, Local 4-1 v. BP Pipelines (North America)*, 191 F. Supp.2d 852, 860 (S.D. Tex. 2002) (remanding to original arbitrator for clarification of award); *see also New England Tel.*, 628 F.2d at 649 ("The grievance arbitration procedures, contracted for by the parties, were never intended to force a grievant into the role of a modern day Sisyphus") (citation omitted).

III.    **Attorney's Fee Issue.**

In addition to appealing from Judge Pittman's summary judgment ruling, CCB also appealed from the undersigned's Order (doc. 41) dated July 17, 2006, awarding the Union attorney's fees and expenses in the amount of $11,785.06.  Shortly after remanding this action for this District Court to determine the appropriate procedure for resolving the damages issue, the appellate court vacated this Court's ruling on attorney's fees and remanded for reconsideration in light of its order on the damages issue.  (Doc. 48.)  Having resolved the

procedural question posed by the Eleventh Circuit, it is appropriate now to reconsider the July 17 Order, as directed.[12]

       In awarding attorney's fees to the Union, the undersigned specifically determined that the Complaint (doc. 1) to vacate the Award was without justification because (a) no reasonable employer could have concluded that the Award did not draw its essence from the collective bargaining agreement, yet that argument was the focal point of CCB's request to vacate the Award; and (b) CCB's petition to vacate the Award as incomplete was not substantially justified under *AAA Plumbing* and other authorities, which provide that clarification - not vacatur - is the appropriate course of action when an arbitral award fails to quantify a make-whole remedy. (July 17 Order (doc. 41), at 5-7.)  The Court further found that CCB's conduct amounted to a refusal to abide by the Award because (a) CCB's reaction to the Award was immediately to file an unjustified lawsuit seeking to vacate it; (b) to date, no backpay has ever been paid under the Award; (c) CCB's lawsuit spurned the arbitrator's stated mechanism for resolving any dispute arising from implementation of the Award, that being his retention of jurisdiction for 120 days awaiting the parties' request for further arbitral involvement on damages; (d) the Award's failure to compute a precise backpay amount did not confer license on CCB to disavow the Award altogether by filing an unjustified lawsuit to vacate it; and (e) examined in its entirety, CCB's conduct following entry of the Award cannot reasonably construed as anything other than a refusal to abide by it.  (*Id.* at 7.)

       The obvious question is whether and how these conclusions in the July 17 Order are impacted by the Eleventh Circuit's decision remanding this action for determination of the appropriate procedure for calculating the amount of damages.  After careful study of the Eleventh Circuit ruling and the July 17 Order, the Court finds that nothing in the Eleventh Circuit's opinion warrants rescission or revision of the attorney's fee award.  If anything,

---

[12]    Because reconsideration of the July 17 Order in light of the Eleventh Circuit ruling implicates purely legal questions, because the Court does not require the parties' assistance in interpreting its own July 17 Order, because the Eleventh Circuit's mandate on the damages issue is clear and unambiguous, and because the Court is of the opinion that further delays would serve the interests of neither justice nor efficiency, the Court performs the requisite reconsideration without ordering yet another round of briefing by the parties.

portions of that opinion reinforce the undersigned's conclusions on the attorney's fee issue.  For example, the Eleventh Circuit opinion observed that CCB "no longer challenges the merits of the Arbitrator's Decision that there was a breach of contract."  (Doc. 45, at 3.)  By abandoning the issues that prompted its petition to vacate the arbitration award in the first place, and indeed renouncing all attempts to vacate the Award on appeal, CCB's conduct on appeal bolsters the undersigned's determination that the Complaint to vacate the Award was filed without justification.  Nothing in the Eleventh Circuit opinion finds or implies that CCB was substantially justified in seeking to vacate the Award as failing to draw its essence from the collective bargaining agreement or being incomplete; therefore, the undersigned's determination that CCB's lawsuit was without justification remains intact after the Eleventh Circuit's ruling.[13]

With respect to this Court's finding that CCB's conduct amounted to a refusal to abide by the Award, that determination is in no way disturbed by the ruling on appeal.  The Eleventh Circuit explained that the Award is "unenforceable because it is ambiguous."  (Doc. 45, at 3.)  But to deem the Award ambiguous is not to declare it invalid or non-binding on the parties.  To the contrary, the arbitrator's liability determination was absolutely binding on the parties, notwithstanding his failure to resolve the damages question.  What would a party do to abide by the Award in such a situation?  The party might negotiate with the Union to resolve the financial aspect of the grievance.  If such efforts were not successful, the party might request that the arbitrator reopen the record and take evidence as to the make-whole remedy.  Alternatively, the party might institute a new grievance procedure, arguing (albeit incorrectly) that a new arbitrator should decide the issue of damages.  But a party abiding by the Award would not file a lawsuit seeking to vacate the Award in its entirety on grounds that were substantially unjustified, as a

---

[13]    To be sure, the Eleventh Circuit found that the parties had agreed that the Award was incomplete and ambiguous.  (Doc. 45, at 3.)  But saying that the Award is incomplete and ambiguous is not the same as saying that it is reasonable to bring a federal lawsuit seeking to vacate the Award on that basis, when *AAA Plumbing* and other binding precedents are directly to the contrary.  The Eleventh Circuit did not find in this case that vacatur would be appropriate in those circumstances, nor did CCB make such an argument on appeal.  By contrast, a cornerstone of CCB's argument to Judge Pittman on summary judgment was that the Award should be vacated as incomplete. (Plaintiff's Proposed Determinations (doc. 19), at 11-14.)

matter of law.[14]  Yet this last course of action is precisely what CCB did.  In the undersigned's view, the act of filing an unjustified complaint to vacate the liability portion of an arbitration award constitutes the very definition of refusing to abide by that award.  Accordingly, after careful consideration of the Eleventh Circuit's determination that the Award was incomplete, unenforceable and ambiguous because it omitted calculation of damages, the Court remains of the opinion that CCB's conduct in bringing this lawsuit seeking exclusively to vacate the Award on legally defective grounds constitutes a refusal to abide by said Award, such that award of attorney's fees against CCB is appropriate.

In short, CCB's re-framing of the issue on appeal essentially amounts to a renunciation of its legal challenge to the liability portion of the Award, which was the *raison d'etre* of this lawsuit during the 15 months it spent in District Court before being appealed by CCB.  There is no indication in the pleadings predating that appeal that CCB brought this action to seek a declaration that the damages aspect of the Award should be ruled on by a new arbitrator in a new grievance arbitration proceeding.  Had CCB wished to abide by the Award and challenge the method of computing damages, it could have filed a declaratory judgment action on that point or invoked the grievance machinery on the question of damages.  It did neither.  Instead, CCB filed a federal lawsuit seeking vacatur of the Award in its entirety, and appealed from Judge Pittman's adverse ruling on that point, before abandoning its liability arguments and refashioning this dispute as something else on appeal.  The ever-shifting, chameleonic nature of CCB's claims notwithstanding, the undersigned remains firmly convinced that an award of attorney's fees in

---

[14]     In this regard, it is important to bear in mind that the Complaint says nothing about requesting a judicial declaration as to the proper arbitral procedure for resolving the damages issue.  The crux of this matter mysteriously evolved into a dispute over this procedural question once the case reached the Eleventh Circuit on appeal.  But that bit of alchemy cannot obscure the fact that this lawsuit was couched as something completely different when it was pending in this District Court.  Far from being a dispute over whether the old arbitrator or a new arbitrator would decide damages, CCB framed its legal challenge as being one to vacate the Award, not one to accept the liability portion of the Award and resolve a *bona fide* dispute over how to calculate the remedy.  Nothing in CCB's conduct while this action was pending in District Court antecedent to the appeal can reasonably be viewed as evincing an intent to abide by the arbitrator's liability determination; to the contrary, as this Court has previously found, CCB proffered a barrage of unjustified legal arguments seeking to attack said determination.

-16-

this case is warranted because CCB has without justification refused to abide by the award of an arbitrator. *See International Union of Dist. 50, United Mine Workers of America v. Bowman Transp., Inc.*, 421 F.2d 934, 935 (5th Cir. 1970) (reciting legal standard). Simply put, this litigation has served merely to draw out a simple labor dispute for 25 months (and counting) after liability was established by Arbitrator Curry, substantially taxing the resources of the Union and the federal courts along the way to dispose of a series of unjustified legal arguments by the employer.

After fully reconsidering its July 17 Order in light of the Eleventh Circuit's opinion entered on December 13, 2006, the Court finds that the July 17 Order is due to be, and the same hereby is, **reinstated**.

**IV.   Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.    Pursuant to the appeals court's instructions on remand, the Court finds that the proper procedure for resolving the damages issue is for this action to be remanded to the original arbitrator for the narrow purpose of determining the amount of the Union's make-whole remedy arising from CCB's breach of the collective bargaining agreement in unilaterally implementing a new distribution system without Union consent. This action is **remanded** to Arbitrator Harold Curry for that purpose.

2.    Pursuant to the appeals court's directive that the award of attorney's fees be reconsidered in light of the appellate proceedings, the Court has conducted such reconsideration. Based on that reconsideration, the Order (doc. 41) dated July 17, 2006 is hereby **reinstated**, and the Court hereby **awards** the Union attorney's fees of $11,395.00 and expenses of $390.06, for a total award of **$11,785.06**.

3.    Notwithstanding the remand of this action to arbitration, this Court retains jurisdiction to confirm or vacate the resulting damages award under 9 U.S.C. §§ 9-10. *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998). Accordingly, the Court will not dismiss the case in its entirety, but instead **stays** this action pending the outcome of the remand to Arbitrator Curry. Beginning in

-17-

June 2007, the parties are **ordered** to file, on or before the **second Thursday of each month**, a joint written report reflecting the status of the arbitration proceedings.

DONE and ORDERED this 11th day of May, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE